**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brian Keith Echols, | No. CV-22-00788-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| SafeRent Solutions LLC, | |
| Defendant. | |

There are three motions pending before the Court: (1) Plaintiff Brian Keith Echols's ("Plaintiff") motion for default judgment (Doc. 13); (2) Defendant SafeRent Solutions, LLC's ("SafeRent") motion to set aside default (Doc. 18); and (3) SafeRent's motion to dismiss for lack of personal jurisdiction (Doc. 23). For the following reasons, SafeRent's motion to set aside default is granted and the other two motions are denied.

## BACKGROUND

I.    The Complaint

On May 9, 2022, Plaintiff filed the complaint. (Doc. 1.) It alleges that SafeRent, a consumer reporting agency, violated the Fair Credit Reporting Act ("FCRA") by preparing a consumer report about Plaintiff and failing to "follow reasonable procedures to assure maximum possible accuracy" of the information concerning Plaintiff. (*Id.* ¶ 86, quoting 15 U.S.C. § 1681e(b).) More specifically, the complaint alleges that in March 2022, Plaintiff, an Arizona resident and "honest, hard-working public-school teacher," needed to quickly find a new place to live when he and his wife received a 30-day notice

to vacate their rental home.  (*Id.* ¶¶ 8, 12, 14.)  Over the next few weeks, Plaintiff and his wife searched for suitable housing in Phoenix, and although they completed 12 rental applications—racking up $1,800 in non-refundable application fees—each one was "inexplicably" denied.  (*Id.* ¶¶ 16-31.)  Plaintiff asked one of the rental companies why his application had been denied and was told that either his or his wife's consumer report included criminal records.  (*Id.* ¶¶ 33-34.)  Plaintiff and his wife were "shocked and horrified," as neither "had any criminal history to speak of."  (*Id.* ¶ 35.)  Plaintiff was told that, if he wanted "more details," he would need to request his (and his wife's) background checks from SafeRent, a consumer reporting agency incorporated in Delaware with a principal place of business in Texas.  (*Id.* ¶¶ 5, 35.)

Plaintiff sought and eventually obtained his SafeRent report.  (*Id.* ¶¶ 36-44.)  Under the heading "MULTI-STATE PLUS CRIMINAL SEARCH REPORT," the report identified three criminal records involving serious, felony-level drug charges.  (*Id.* ¶¶ 41-42.)  Two of those records reflected seven-year prison sentences.  (*Id.* ¶ 43.)  The records at issue indicated that the "FULL NAME" of the person who sustained the conviction was "Brian Robinson"—a name which Plaintiff, Brian *Echols*, has never used.  (*Id.* ¶¶ 48-49.)  The address for "Brian Robinson" was in Chicago, Illinois, a city and state in which Plaintiff has never lived.  (*Id.* ¶¶ 50-51.)  Brian Robinson's social security number differed from Plaintiff's as well.  (*Id.* ¶ 55.)  The two Brians did, however, share the same date of birth.  (*Id.* ¶ 56.)

The complaint alleges that because SafeRent's website states that the information provided in the criminal history section is an "instant report," it follows that "the information is generated instantly via a database without conducting a direct search of applicable public records."  (*Id.* ¶ 58.)   The complaint further alleges, "[u]pon information and belief," that: (1) "there is no human component in this 'instant report' process wherein a human being reviews reported records to verify their accuracy"; (2) "the 'Multi-State Criminal' search consists of SafeRent's algorithms querying a database containing criminal record information"; (3) "the 'Multi-State Criminal' search

1    deliberately reports purported 'matches' using loose matched algorithms because it is
2    more profitable for SafeRent to report more records in its computer reports"; and (4) "if a
3    human component were involved in the 'Multi-State Criminal' search, the search would
4    be more accurate but would also be more costly for SafeRent, which is precisely why it
5    relies on automated data instead." (*Id.* ¶¶ 59-62.)

6         Plaintiff alleges he suffered "damage to reputation, emotional distress, loss of
7    housing opportunities, anxiety, frustration, anger, fear, embarrassment, humiliation,
8    sleepless nights, determent from pursuit of employment opportunities, and wasted time."
9    (*Id.* ¶ 83.) Plaintiff seeks actual damages, statutory damages, punitive damages, costs and
10   attorneys' fees, interest, and any other relief the Court deems proper. (*Id.* at 13-14.)

11   II.   Procedural History

12        On May 11, 2022, Plaintiff served SafeRent. (Doc. 8 at 3.)

13        SafeRent's deadline to respond to the complaint was June 1, 2022. On June 3,
14   2022, after SafeRent failed to respond, Plaintiff applied for entry of default. (Doc. 11.)

15        On June 6, 2022, the Clerk entered default. (Doc. 12.)

16        On June 10, 2022, Plaintiff filed a motion for default judgment. (Doc. 13.)

17        On June 24, 2022, SafeRent appeared for the first time and filed a response
18   opposing the motion for default judgment. (Doc. 14.) The default judgment motion is
19   now fully briefed. (Doc. 17 [reply]; Doc. 22 [surreply].)

20        On July 1, 2022, SafeRent filed a motion to set aside default. (Doc. 18.) That
21   motion is now fully briefed. (Docs. 24, 25.)

22        On July 8, 2022, SafeRent filed a motion to dismiss for lack of personal
23   jurisdiction. (Doc. 23.) That motion, too, is now fully briefed. (Docs. 26, 27.)[1]

24        …

25        …

26        …

27

28   _____

     [1]    SafeRent's request for oral argument on its motion to set aside default is denied
     because argument would not aid the decisional process. *See* LRCiv 7.2(f).

**DISCUSSION**

The Court will begin by addressing SafeRent's motion to set aside default because its resolution helps set the stage for the resolution of the other motions.  *Bass v. Brown*, 2022 WL 1619033, *1 (D. Ariz. 2021) ("The Court will begin by addressing Defendant's motion to set aside entry of default because, if that motion were granted, Plaintiffs' motion for default judgment would necessarily fail.").

I.      Motion To Set Aside Default

      A.      **Legal Standard**

Under Rule 55(c) of the Federal Rules of Civil Procedure, the Court "may set aside an entry of default for good cause."  When determining whether good cause exists, courts consider the three *Falk* factors:[2] "(1) whether the plaintiff will be prejudiced, (2) whether the defendant has a meritorious defense, and (3) whether culpable conduct of the defendant led to the default." *Falk v. Allen,* 739 F.2d 461, 463 (9th Cir. 1984).  "This standard, which is the same as is used to determine whether a default judgment should be set aside under Rule 60(b), is disjunctive, such that a finding that any one of these factors is true is sufficient reason for the district court to refuse to set aside the default." *United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010).  "Crucially, however, judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits." *Id.* (quotation marks omitted).[3]  The movant "bears the burden of proving the

---

[2]     Courts "consistently" refer to these factors as the "*Falk* factors." *Brandt v. Am. Bankers Ins. Co. of Fla.*, 653 F.3d 1108, 1111 (9th Cir. 2011).

[3]     In *Mesle*, the Ninth Circuit faulted the district court for "omitt[ing] any mention of the 'extreme circumstances' requirement for judgment by default," which was "no minor omission" because "it fundamentally altered the standard, turning the court's attention to everyday oversights rather than to whether there were any extreme circumstances." 615 F.3d at 1091.  Nevertheless, the Ninth Circuit subsequently clarified that "[t]he 'extreme circumstances' policy language was intended to remind courts that default judgments are the exception, not the norm, and should be viewed with great suspicion" and that although courts should "keep this policy concern in mind," they are not required "in addition to applying [the] three [*Falk*] factors, to articulate why a particular case presents 'extreme circumstances.'" *United States v. Aguilar*, 782 F.3d 1101, 1106 (9th Cir. 2015). *See also Gregorian v. Izvestia*, 871 F.2d 1515, 1526 (9th Cir. 1989) ("The district court erred in requiring defendants to demonstrate the existence of 'extraordinary circumstances' in addition to satisfying the three-part [*Falk* test] . . . .").

existence of a justification" to set aside the default.  *Cassidy v. Tenorio*, 856 F.2d 1412, 1415 (9th Cir. 1988).

As for the first *Falk* factor, a plaintiff is prejudiced if his ability to pursue his claim has been "hindered" due to delay resulting in such tangible harms as the loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion. *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 701 (9th Cir. 2001) (citation omitted). "To be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case." *Id.*  "[M]erely being forced to litigate on the merits cannot be considered prejudicial." *Id.*

As for the second *Falk* factor, "[a] defendant seeking to vacate a default judgment must present specific facts that would constitute a defense," but "the burden on a party seeking to vacate a default judgment is not extraordinarily heavy."  *Mesle*, 615 F.3d at 1094 (citations omitted).  "All that is necessary to satisfy the 'meritorious defense' requirement is to allege sufficient facts that, if true, would constitute a defense"—the truth of those facts is "the subject of the later litigation." *Id.*  Nevertheless, "conclusory statements" will not suffice, and a "mere general denial without facts to support it is not enough to justify vacating a default or default judgment." *Franchise Holding II, LLC. v. Huntington Restaurants Grp., Inc.*, 375 F.3d 922, 926 (9th Cir. 2004).  "A complete lack of meritorious defenses itself constitutes an extreme circumstance." *Aguilar*, 782 F.3d at 1107.  Setting aside a default "in the absence of some showing of a meritorious defense would cause needless delay and expense to the parties and court system." *Hawaii Carpenters' Tr. Funds v. Stone*, 794 F.2d 508, 513 (9th Cir. 1986).  When the movant makes "no showing of a meritorious defense," it would be "an abuse of discretion to set aside the entry of default." *Id.*

As for the third *Falk* factor, "[a] defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and *intentionally* failed to answer." *Mesle*, 615 F.3d at 1092 (brackets omitted).  "[I]n this context the term 'intentionally' means that a movant cannot be treated as culpable simply for having made a conscious

choice not to answer; rather, to treat a failure to answer as culpable, the movant must have acted with bad faith, such as an intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process." *Id.* (quotation marks omitted). A defendant is culpable "where there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond." *Id.* (citation omitted). "[S]imple carelessness is not sufficient to treat a negligent failure to reply as inexcusable, at least without a demonstration that other equitable factors, such as prejudice, weigh heavily in favor of denial of the motion to set aside a default." *Id.* However, "[w]hen considering a legally sophisticated party's culpability in a default, an understanding of the consequences of its actions *may* be assumed, and with it, intentionality." *Id.* at 1093 (emphasis added). Thus, the Court "retains the discretion (but not the obligation) to infer intentionality from the actions of a legally sophisticated party and to thereby find culpability." *Idaho Golf Partners, Inc. v. Timberstone Mgmt. LLC*, 2015 WL 1481396, *4 (D. Idaho 2015). "A district court may exercise its discretion to deny relief to a defaulting defendant based solely upon a finding of defendant's culpability, but need not." *Brandt v. Am. Bankers Ins. Co. of Fla.*, 653 F.3d 1108, 1112 (9th Cir. 2011). "[W]here the defendant has a meritorious defense and any prejudice can be cured," a court's finding that the defendant "acted culpably [does] not preclude it, as a matter of law," from granting relief under Rule 60(b)(1) or Rule 55(c). *Id.*

The decision whether to vacate the entry of default "is committed to the discretion of the district courts" and is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id*. (citations omitted). "The court's discretion is especially broad where . . . it is entry of default that is being set aside, rather than a default judgment." *Mendoza v. Wight Vineyard Mgmt.*, 783 F.2d 941, 945 (9th Cir. 1986). "[W]here timely relief is sought from a default judgment and the movant has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the judgment so that cases may be decided on their merits." *Schwab v. Bullock's Inc.*,

508 F.2d 353, 355 (9th Cir. 1974).  The same reasoning applies—with at least as much force—to relief from entry of default.  *Mendoza*, 783 F.2d at 945.

### B.    Analysis

The Court has little trouble concluding that the first and third *Falk* factors favor setting aside the default.  SafeRent has provided a declaration from its in-house counsel, Kristopher Keith, who avers that he was in the process of retaining Arizona attorneys to serve as litigation counsel in this case but failed to calendar the deadline to respond to the complaint and "unintentionally overlooked" it.  (Doc. 18 at 14 ¶¶ 9-11.)  Mr. Keith retained defense counsel "on or about June 23, 2022."  (*Id.* ¶ 10.)  At that time, Mr. Keith was unaware that SafeRent had missed its deadline to respond and did not know that default had been entered or that a motion for default judgment was pending.  (*Id.* ¶¶ 11, 13, 16, 17.)  The following day, the error was brought to Mr. Keith's attention (*id.* ¶ 14), and SafeRent immediately filed its response to Plaintiff's motion for default judgment. (Doc. 14.)  SafeRent filed its motion to set aside the default one week later.  (Doc. 18.)

As for the first *Falk* factor, the short delay here—SafeRent's participation in this litigation began 23 days after the response deadline—has not prejudiced Plaintiff's ability to litigate this case.  Plaintiff's claims have not been "hindered" due to delay resulting in tangible harm such as the loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion.  *TCI Grp.*, 244 F.3d at 701.  Plaintiff argues that he has been prejudiced because he suffers ongoing harms, including fear that the inaccurate consumer report could harm his employment aspirations or result in a negative interaction with police if he were pulled over while driving.  (Doc. 24 at 10-11.)  Putting aside the fact that it is unclear why the alleged inaccuracies in the consumer report cannot be corrected before the resolution of this lawsuit, Plaintiff has not cited any authority to support the proposition that ongoing harm that does not "hinder" a claim is relevant when determining whether good cause exists to set aside a default.

As for the third *Falk* factor, although SafeRent is a legally sophisticated party and Mr. Keith is an attorney, the Court will not assume intentionality.  SafeRent has credibly

explained that its failure to respond to the complaint by the deadline was due to Mr. Keith's negligent failure to calendar the deadline. There is no reason to question that explanation. SafeRent "openly acknowledged its error, without subterfuge or misrepresentation of its mistake or the circumstances." (Doc. 25 at 1.) While unfortunate, such an error is excusable. *Cf. Washington v. Ryan*, 833 F.3d 1087, 1099 (9th Cir. 2016) ("[W]here other factors counsel relief, a calendaring mistake and related failure to catch that mistake is no bar to Rule 60(b)(1) relief."). Plaintiff argues that SafeRent, an experienced litigant that "litigates a new lawsuit approximately once every three (3) days, almost exclusively in federal courts other than Delaware and Texas," should have been able to "quickly retain local counsel" and could have contacted opposing counsel or sought an extension from the Court if it required more time. (Doc. 24 at 7-8.) But SafeRent did not miss the deadline because it was unable to secure counsel more quickly. It missed the deadline (and took its time securing counsel) because Mr. Keith did not calendar the deadline and therefore did not move with the haste that appreciation of the deadline would have inspired. In short, SafeRent's failure to respond to the complaint was inadvertent, not intentional.

The second *Falk* factor presents a closer question. SafeRent "bears the burden of proving . . . the existence of a meritorious defense." *Cassidy*, 856 F.2d at 1415. This burden "is not extraordinarily heavy"—all SafeRent must do is "allege sufficient facts that, if true, would constitute a defense." *Mesle*, 615 F.3d at 1094. SafeRent asserts a lack of personal jurisdiction as one defense, but as discussed in Part III below, that defense is not meritorious. The other defenses raised in SafeRent's motion appear to be as follows: (1) Plaintiff improperly "rests a number of his allegations in the Complaint 'upon information and belief' rather than actual factual allegations"; (2) Plaintiff's factual allegations fail to establish that SafeRent "willfully or negligently violated § 1681e(b)"; (3) "[i]n reality, [SafeRent's] processes for evaluating consumer report information are thorough and reasonable, and only information reasonably investigated is provided in its consumer reports, including in the report applicable to Plaintiff as referenced in his

Complaint in the Case"; and (4) Plaintiff's request for damages is inflated and factually unsupported. (Doc. 18 at 5-7.)

Most of these proffered defenses are not meritorious. As for the first defense (*i.e.*, Plaintiff was barred from making certain allegations "on information and belief"), SafeRent does not cite any authority supporting its position on this point and Ninth Circuit law appears to be to the contrary. *Cf. Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d 480, 493-94 (9th Cir. 2019) (rejecting application of a pleading standard that "would create an often insurmountable legal barrier to the protection of the interests the FCRA sought to protect" and emphasizing that, "[e]ven under the more rigid pleading standard of Federal Rule of Civil Procedure 9 . . . the pleader is not required to allege facts that are peculiarly within the opposing party's knowledge, and allegations based on information and belief may suffice, so long as the allegations are accompanied by a statement of facts upon which the belief is founded") (citation and internal quotation marks omitted).

As for the third defense (*i.e.*, SafeRent cannot be held liable for inaccuracies in Plaintiff's report because it followed reasonable procedures when compiling the report), the problem is that SafeRent has offered nothing but conclusory assertions regarding its procedures. "In order to make out a prima facie violation under § 1681e(b), a consumer must present evidence tending to show that a credit reporting agency prepared a report containing inaccurate information." *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995). Here, the complaint sufficiently alleges that SafeRent's report contained inaccurate information concerning Plaintiff's criminal history, so it is SafeRent's burden to "establish[] that [the] inaccurate report was generated despite the agency's following reasonable procedures." *Id.* SafeRent's motion and supporting materials are insufficient to meet this burden, even under the relatively lenient standards applicable to a request to set aside a default, because they provide no specifics whatsoever about the procedures that SafeRent follows when generating credit reports. The motion asserts, in conclusory fashion, that SafeRent's "processes for evaluating consumer report information are thorough and reasonable, and only information

1    reasonably investigated is provided in its consumer reports."  (Doc. 18 at 6.)  In support

2    of this assertion, SafeRent points to paragraph 20 of Mr. Keith's declaration, but that

3    paragraph simply repeats the same conclusory verbiage.  (Doc. 18 at 15.)  It is difficult to

4    see how this approach could be deemed sufficient to establish the existence of a

5    meritorious defense.  *Cf. Franchise Holding II*, 375 F.3d at 926 ("To justify vacating the

6    default judgment . . . HRG had to present the district court with specific facts that would

7    constitute a defense.  HRG never did this.  Instead, it offered the district court only

8    conclusory statements that a dispute existed. A mere general denial without facts to

9    support it is not enough to justify vacating a default or default judgment.") (cleaned up).

10       As for the fourth defense (*i.e.*, lack of evidence supporting damages), the Court

11   tends to agree with Plaintiff's contention that "[d]iscussions concerning damages are not

12   relevant to setting aside the Court's entry of default, and no part of SafeRent's discussion

13   thereof constitutes a 'meritorious defense.'"  (Doc. 24 at 9 n.1.)  Even assuming there are

14   problems with *some* of Plaintiff's claimed categories of damages, the complaint

15   specifically alleges that Plaintiff sustained actual damages arising from the spate of

16   application fees he was forced to pay as his rental applications were repeatedly denied.

17       This leaves SafeRent's second defense, which is that the factual allegations in the

18   complaint fail to establish that SafeRent "willfully or negligently" violated § 1681e(b) of

19   the FCRA.  Although the Court disagrees as to the sufficiency of the allegations

20   regarding negligence—as discussed above, the complaint adequately alleges, albeit on

21   information and belief, that SafeRent followed a flawed process for obtaining Plaintiff's

22   criminal history, and SafeRent offers only conclusory assertions in an attempt to establish

23   a meritorious defense as to that charge—it doesn't follow that those allegations are also

24   sufficient to establish a willful violation of the statute.[4]  "A 'willful' violation under the

25   FCRA includes 'not only knowing violations of a standard, but reckless ones as well.'"

26   *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 711 n.1 (9th Cir. 2010)

---

27
28   [4]       In its response to Plaintiff's motion for default judgment, SafeRent elaborates that "the assumption that Defendant willfully violated the Fair Credit Report Act . . . is far from being definitively established."  (Doc. 14 at 7.)

(quoting *Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47, 57 (2007)).  "[T]he defendant must have taken action involving 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'"  *Id.* (citation omitted).  "Willfulness under the FCRA is generally a question of fact for the jury."  *Taylor v. First Advantage Background Servs. Corp*, 207 F. Supp. 3d 1095, 1112 (N.D. Cal. 2016).  *Cf. Dennis v. BEH-1, LLC*, 520 F.3d 1066, 1071 (9th Cir. 2008) (granting summary judgment against credit agency on the plaintiff's "claim that Experian negligently failed to conduct a reasonable reinvestigation" but clarifying that "[w]hether Experian's failure was also willful . . . is a question to be taken up on remand").

The complaint alleges that SafeRent's conduct was not just negligent, but also willful, because SafeRent was "aware its procedures frequently result in the reporting of inaccurate information, [as] evidenced by SafeRent's involvement in class action lawsuits concerning its violative conduct."  (Doc. 1 ¶ 66.)  The Court is skeptical that this allegation is sufficient to establish willfulness (or, more precisely, to show that SafeRent lacks a meritorious defense to a claim of willfulness).  Not all lawsuits are valid.  Thus, the mere fact that SafeRent was previously sued does not establish that SafeRent knew the conduct giving rise to those earlier lawsuits was wrongful and acted willfully by continuing to engage in the same conduct with respect to Plaintiff.  *Cf. O'Toole v. City of Antioch*, 2015 WL 5138277, *14 (N.D. Cal. 2015) ("[T]he mere fact that lawsuits were filed does not establish a pattern of constitutional violations actually occurred.  As mentioned above, 'providing evidence of past complaints is generally insufficient to establish a policy or custom of indifference.'") (citation omitted).

The complaint also alleges that SafeRent had financial motivations for adopting its challenged process for conducting criminal history checks—"if a human component were involved in the 'Multi-State Criminal' search, the search would be more accurate but would also be more costly for SafeRent, which is precisely why it relies on automated data instead."  (Doc. 1 ¶¶ 61-63.)  The Court is again skeptical as to the sufficiency of this allegation for meritorious-defense purposes.  "[C]orporations are, after all, profit-

making institutions, and, absent special circumstances, they can be expected to follow courses of action most likely to maximize profits." *United States v. Falstaff Brewing Corp.*, 410 U.S. 526, 568 (1973) (Marshall, J., concurring). Thus, even if SafeRent was, as alleged, motivated by financial considerations when adopting its procedure for conducting criminal background checks, SafeRent may have a meritorious defense to the willfulness claim. *Cf. FTC v. Qualcomm Inc.*, 969 F.3d 974, 1003 (9th Cir. 2020) ("[P]rofit-seeking behavior alone is insufficient to establish antitrust liability.").

For these reasons, the Court chooses, in its discretion, to grant SafeRent's motion to vacate the entry of default. Although SafeRent complicated matters by failing to provide specific information concerning its process for conducting criminal history checks (and the reasonableness of that process), the bottom line is that SafeRent's very short delay in responding to the complaint was understandable and caused no prejudice to Plaintiff and that SafeRent has, despite the conclusory nature of its briefing, raised questions about whether it has a meritorious defense to at least one component of Plaintiff's claims. Recognizing that "doubt, if any, should be resolved in favor of the motion . . . so that cases may be decided on their merits," *Schwab*, 508 F.2d at 355, the Court concludes that it would be inequitable to maintain the default under these circumstances.

II.   <u>Motion For Default Judgment</u>

Because SafeRent's motion to set aside the default has been granted, Plaintiff's motion for default judgment (Doc. 13) requires little additional discussion. It is denied. *Troy-CSL Lighting, Inc. v. Bath Kitchen Decor, LLC*, 2014 WL 12911165, *5 (C.D. Cal. 2014) ("In light of the Court's decision to set aside the entry of default against Defendants, Plaintiff's application for default judgment must be denied. Federal Rule of Civil Procedure 55(b) provides for a court ordered default judgment following entry of default by the court clerk under Rule 55(a). Because this order vacates the clerk's entry of default against Defendants, Plaintiff can no longer meet Rule 55(b)'s procedural requirements for default judgment.") (cleaned up); *Bass*, 2022 WL 1619033 at *1 (same).

III.    Motion To Dismiss For Lack Of Personal Jurisdiction

A.    **Evidentiary Basis**

SafeRent has requested an evidentiary hearing on its motion to dismiss for lack of personal jurisdiction.  (Doc. 23 at 8.)[5]  "If the pleadings and other submitted materials raise issues of credibility or disputed questions of fact with regard to jurisdiction, the district court has the discretion to take evidence at a preliminary hearing in order to resolve the contested issues."  *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977).   An evidentiary hearing is unnecessary here because the jurisdictional dispute can be resolved by reference to uncontroverted facts.

B.    **Legal Standard**

A defendant may move to dismiss for lack of personal jurisdiction.  Fed. R. Civ. P. 12(b)(2).  "In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper."  *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015).  "Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss."  *Id.* (citations and quotation marks omitted).  "In determining whether the plaintiff has met that burden, a court must accept as true all uncontroverted allegations in the plaintiff's complaint and must resolve all disputed facts in favor of the plaintiff."  *Burri Law PA v. Skurla*, 35 F.4th 1207, 1213 (9th Cir. 2022).

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons."  *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1141 (9th Cir. 2017) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014)).  "Arizona law permits the exercise of personal jurisdiction to the extent permitted under the United States Constitution."  *Id.* (citing Ariz. R. Civ. P. 4.2(a)).  Accordingly, whether this Court has "personal jurisdiction over [SafeRent] is subject to the terms of the Due Process

---

[5]    Plaintiff asserts that he has "more than met" his burden but requests an evidentiary hearing in the alternative.  (Doc. 26 at 2, 15.)

Clause of the Fourteenth Amendment." *Id.*

"Constitutional due process requires that defendants 'have certain minimum contacts' with a forum state 'such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Minimum contacts exist "if the defendant has continuous and systematic general business contacts with a forum state (general jurisdiction), or if the defendant has sufficient contacts arising from or related to specific transactions or activities in the forum state (specific jurisdiction)." *Id.* at 1142 (quotation marks omitted).

Plaintiff does not contend that SafeRent is subject to general jurisdiction in Arizona. Thus, the Court must apply the Ninth Circuit's three-prong test to determine whether SafeRent is subject to specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Id.* "The plaintiff bears the burden of satisfying the first two prongs of the test." *Id.* "If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." *Id.* "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.*

**C.    Analysis**

The analysis here is not difficult. At the behest of various Arizona landlords, to help them determine whether to allow an Arizona resident to rent and reside in one of

various Arizona properties, SafeRent investigated the prospective tenant and prepared an inaccurate consumer report, which was made available to and read by the landlords in Arizona, resulting in the Arizona resident's inability to secure Arizona housing.  These facts satisfy the test for specific personal jurisdiction in Arizona.

### 1.   Purposeful Direction

"The first prong of the specific jurisdiction test refers to both purposeful direction and purposeful availment."  *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011).  "'[P]urposeful availment' and 'purposeful direction' are distinct concepts."  *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107 (9th Cir. 2020).  "Purposeful availment generally provides a more useful frame of analysis for claims sounding in contract, while purposeful direction is often the better approach for analyzing claims in tort," but there is no "rigid dividing line between these two types of claims."  *Id.*  "At bottom, both purposeful availment and purposeful direction ask whether defendants have voluntarily derived some benefit from their interstate activities such that they 'will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts.'"  *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985)).

The "purposeful availment" analysis applies when the defendant has taken deliberate action within the forum state, whereas the "purposeful direction" analysis applies "to a defendant who never physically entered the forum state."  *Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 604 (9th Cir. 2018).   In *Freestream Aircraft*, the Ninth Circuit explained:

> In *Schwarzenegger v. Fred Martin Motor Co.*, we again described the purposeful direction test as applying to out-of-forum conduct.  We explained that a showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions *in* the forum, such as executing or performing a contract there.  By contrast, a showing that a defendant purposefully directed his conduct toward a forum state usually consists of evidence of the defendant's actions *outside* the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere.  We also noted that a purposeful availment analysis is most often used in suits sounding in contract, whereas a purposeful direction analysis is most often used in suits sounding in tort.  Read together, those

statements comparing within-forum-state versus out-of-forum-state conduct, and contract versus tort actions, suggest that a purposeful direction analysis naturally applies in suits sounding in tort where the tort was committed outside the forum state.

*Id.* at 605 (citations and quotation marks omitted).

Here, both sides ask the Court to conduct a purposeful direction analysis. (Doc. 23 at 4-6; Doc. 26 at 4-8.) Given that agreement, and because SafeRent is alleged to have committed tortious, out-of-forum acts, the Court will proceed as requested. *Freestream Aircraft*, 905 F.3d at 606 ("The effects doctrine . . . makes more sense when dealing with out-of-forum tortfeasors."). The purposeful direction test is satisfied "if a defendant: (1) commits an intentional act, (2) expressly aimed at the forum state, that (3) causes harm the defendant knew was likely to be suffered in the forum state, then the defendant has purposefully directed conduct at the forum state." *Burri*, 35 F.4th at 1213.

### a.  **Intentional Act**

"The meaning of the term 'intentional act' in our jurisdictional analysis is essentially the same as in the context of intentional torts; namely, the defendant must act with the intent to perform an actual, physical act in the real world." *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015) (quotation marks omitted). The parties agree that SafeRent committed an intentional act when it prepared a consumer report about Plaintiff. (Doc. 26 at 4 ["SafeRent concedes it committed an 'intentional act;' specifically, SafeRent prepared a consumer report concerning Plaintiff . . . ."]; Doc. 27 at 1 ["It was SafeRent's act of gathering and processing background criminal information which gives rise to the claim . . . ."]).[6]

### b.  **Express Aiming**

"Express aiming . . . mean[s] 'something more' than 'a foreign act with foreseeable effects in the forum state.'" *Pakootas v. Teck Cominco Metals, Ltd.*, 905

---

[6]     "The Court sees no basis to question whether the output of an automated reporting system is an intentional act. The output of such a system is an act because it is a manifestation of its operator's will." *Gordon v. DTE Energy*, 680 F. Supp. 2d 1282, 1285 (W.D. Wash. 2010).

F.3d 565, 577 (9th Cir. 2018) (citation omitted).  "The 'express aiming' analysis depends, to a significant degree, on the specific type of tort or other wrongful conduct at issue." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 807 (9th Cir. 2004).  "The inquiry whether a forum may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014) (quotation marks omitted).  "[T]he relationship must arise out of contacts that the defendant *himself* creates with the forum State."  *Id.* at 284 (quotation marks omitted).  "[T]he plaintiff cannot be the only link between the defendant and the forum."  *Id.* at 285.  "[C]ourts must evaluate the parties' entire course of dealing, not solely the particular contract or tortious conduct giving rise to the claim." *Glob. Commodities*, 972 F.3d at 1108.

In contesting the exercise of specific personal jurisdiction in Arizona, SafeRent relies heavily on the fact that its preparation of Plaintiff's credit report took place in Texas: "SafeRent compiled the Report in Texas, using the technology from its principal place of business in Irving, Texas.  Once the Report was complete, SafeRent uploaded the Report to the Online Portal, which was also done from Texas."  (Doc. 23 at 5, citations omitted.)  In response, Plaintiff argues it is "common sense" that SafeRent's "act of preparing a consumer report concerning Plaintiff, an Arizona resident, pursuant to a rental application he completed to live at an Arizona-located property" was "aimed at Arizona."  (Doc. 26 at 5.)  Plaintiff asserts that "SafeRent has taken deliberate steps to service Arizona-located rental properties managed by" Progress Residential ("Progress") and reaches into Arizona "each and every time it prepare[s] a consumer report for Progress at one of Progress' more than six hundred (600) Arizona-located rental properties," such that "any consumer reports prepared concerning Arizona-located residents, or prepared pursuant to an application to Progress' Arizona-located properties—both of which apply to the consumer report prepared by SafeRent concerning Plaintiff—are acts expressly aimed at the state of Arizona by SafeRent."  *(Id.*, emphasis omitted.)

Plaintiff has the better of this argument.  The *Calder* "effects" test "focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Freestream*, 905 F.3d at 605.  Indeed, the reason the purposeful direction test applies—and SafeRent asks for that test to be applied (Doc. 23 at 4-5)—is that SafeRent allegedly committed tortious, *out-of-forum* acts.  905 F.3d at 606.

SafeRent also emphasizes that it uploaded the report to an online portal where Progress could access it but did not "mail or otherwise send" the report to Progress in Arizona.  (Doc. 23 at 2.)  This argument lacks merit.  First, "physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact," but "is not a prerequisite to jurisdiction." *Walden*, 571 U.S. at 285.  Second, SafeRent uploaded the report to its online portal to make it accessible to a very specific audience—the landlords of Arizona properties who requested the report.  That SafeRent provided these landlords with the report via the online portal as opposed to sending the report via email or post is a distinction without a difference.  The report was created for and provided to a selective audience that was wholly located in Arizona.  The online portal bears no similarity to "passive" websites[7] where material is posted for anyone, anywhere to view. *Compare Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 415 (9th Cir. 1997) ("[I]t would not comport with 'traditional notions of fair play and substantial justice,' for Arizona to exercise personal

---

[7]   The Ninth Circuit has held that although "maintenance of a passive website alone cannot satisfy the express aiming prong," "operating even a passive website in conjunction with 'something more'—conduct directly targeting the forum—is sufficient." *Mavrix*, 647 F.3d at 1229 (citations omitted)   "In determining whether a nonresident defendant has done 'something more,'" courts consider "several factors, including the interactivity of the defendant's website, the geographic scope of the defendant's commercial ambitions, and whether the defendant 'individually targeted' a plaintiff known to be a forum resident." *Id.* (citations omitted).  This is not a "website" case, but the Court notes that SafeRent's online platform for processing screening reports is interactive and responds with materials specific to the request presented, such that the reports it generates individually target both the properties and the applicants.  Although SafeRent's commercial ambitions are nationwide, the geographic scope of the commercial activity for each report is necessarily limited to where the client property managers have properties—or more specifically, where they have properties to which an applicant has applied.

jurisdiction over an allegedly infringing Florida web site advertiser who has no contacts with Arizona other than maintaining a home page that is accessible to Arizonans, and everyone else, over the Internet.").

SafeRent further argues that its act of compiling a consumer report about an Arizona resident/applicant at the behest of an Arizona property manager was not aimed at Arizona because it "did not initiate any contact with Arizona, or make the decision to retrieve the report on its own or with any express prior knowledge of Plaintiff's previously-existing state of residency."   (Doc. 23 at 5.)   SafeRent cannot create a jurisdictional safe harbor out of the fact that it does not prepare consumer reports at random, without first being asked by a prospective landlord to run the report.   SafeRent has an ongoing relationship with an Arizona business, initiated some time ago.   This relationship involves the generation of numerous consumer reports, and although the request for each consumer report is a "contact" initiated by the landlord of a given Arizona property, the relationship between SafeRent and these landlords is reciprocal and enduring.   SafeRent's creation of Plaintiff's consumer report—along with myriad others—was pursuant to this business relationship, in which the landlords of Arizona properties reach out to SafeRent for assistance in ascertaining information about their prospective tenants.  (Doc. 23 at 11 ¶¶ 3-5.)  Although SafeRent may not have known Plaintiff's "previously-existing state of residency" *before* being asked to create a consumer report about him, Plaintiff has submitted the report SafeRent that generated, which contains Plaintiff's address.  (Doc. 26-1.)  SafeRent also claims it did not know that Plaintiff applied for housing in Arizona as opposed to anywhere else in the nation (Doc. 23 at 6), but the consumer report SafeRent created plainly indicates that Plaintiff was seeking housing in Phoenix.  (Doc. 26-1.)  Thus, SafeRent knew the consumer report it created was pursuant to a business arrangement with the landlord(s) of Arizona properties to screen an Arizona resident who was applying for Arizona housing.  This demonstrates that the act of creating the consumer report about Plaintiff and posting it on the online portal to be viewed by the Arizona property landlord(s) who requested it was

"aimed at" Arizona. *Cf. Calder*, 465 U.S. at 789-90 ("[Petitioners prepared] an article that they knew would have a potentially devastating impact upon respondent. And they knew that the brunt of that injury would be felt by respondent in the State in which she lives and works and in which [the article would be read]. Under the circumstances, petitioners must 'reasonably anticipate being haled into court there' to answer for the truth of the statements made in their article."); *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 777 (1984) (the act of reporting false information about a person was aimed at a state where "the offending material is circulated").

### c.   Knowledge Of Likelihood Of Harm In The Forum State

As for the third prong, Plaintiff argues that "[t]he wealth of case law discussing foreseeability of harm is clear that emotional distresses—like those alleged by Plaintiff in the Complaint—can only be felt where a plaintiff's 'sensibilities' reside" and that "SafeRent makes no effort whatsoever to explain why it did not or could not know Plaintiff's location—and therefore where his sensibilities reside—when in fact such information is reported by SafeRent in Plaintiff's background check." (Doc. 26 at 8.)

The Court agrees. Plaintiff's "SafeRent report shows a field labeled 'Current Address' and an entry showing [his] address in the city of Mesa, Arizona." (*Id.*) Exhibit A to Plaintiff's response is a page from the SafeRent report, listing Plaintiff's Arizona address and further listing the "Property Name" in question as "Progress Residential – Phoenix." (Doc. 26-1.) SafeRent makes no effort to dispute that it knew any harm resulting from its preparation of an inaccurate report about Plaintiff would be suffered in Arizona. *See also Bils v. Nixon, Hargrave, Devans & Doyle*, 880 P.2d 743, 746 (Ariz. Ct. App. 1994) ("By its enactment of the Fair Credit Reporting Act, congress sought to insure 'respect for the consumer's right to privacy' and expressly created a private right of action for willful and negligent violations of the act. The gravamen of an action for the invasion of the right to privacy is the injury to the feelings of the plaintiff, the mental anguish and distress. Here, appellant alleges appellees' conduct violated his right to privacy causing him to suffer emotional injuries including 'nervousness, sleeplessness,

anguish, embarrassment, humiliation, anger, intestinal and gastric distress, loss of concentration, anxiety, and other distress' . . . .  [A]ppellant's residence is in Arizona and so are his 'sensibilities.'  Accordingly, the only place an 'event' can occur constituting a violation of appellant's right to privacy is Arizona.  Because the alleged conduct of appellees was intentionally directed at an Arizona resident and was calculated to cause injury to him here, their contacts were sufficient to confer personal jurisdiction.").

> 2.    Connection Between Forum-Related Activities And Claims

The next step in the specific jurisdiction analysis is assessing whether the claim "arises out of or relates to the defendant's forum-related activities."  *Morrill*, 873 F.3d at 1142.  Both sides contend this step requires "but-for" causation.  (Doc. 23 at 6; Doc. 26 at 8.)[8]

SafeRent's preparation of a consumer report about Plaintiff, an Arizona resident, at the behest of Arizona property landlords for the purpose of aiding them in selecting residents for their Arizona properties was the but-for cause of Plaintiff's injury.  SafeRent makes no real argument to the contrary and simply reasserts that it "does not have any forum-related activity out of which the alleged claim can arise."  (Doc. 23 at 6.)  The Court has little difficulty concluding that Plaintiff's claim arises out of SafeRent's forum-related activity.

> 3.    Reasonableness

"[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  *Burger King*, 471 U.S. at 477.  "[M]inimum requirements inherent in the concept of 'fair play and substantial justice' may defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities.  *Id.* at 477-78.  "[J]urisdictional rules may not

---

[8]    The Supreme Court recently clarified that but-for causation is unnecessary.  *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026-27 (2021) ("None of our precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do. . . . [S]ome relationships will support jurisdiction without a causal showing.").  Nevertheless, demonstrating but-for causation remains sufficient.

be employed in such a way as to make litigation so gravely difficult and inconvenient that a party unfairly is at a severe disadvantage in comparison to his opponent." *Id.* at 478 (quotation marks omitted).

"In determining reasonableness, seven factors are considered: (1) the extent of a defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1021 (9th Cir. 2002). "As no single factor is dispositive, a court must balance all seven." *Id.*

SafeRent addresses, in a cursory manner, the first, second, fourth, and seventh factors, stating that there was no purposeful interjection, that SafeRent "has no contacts with Arizona, making it difficult to defend this action in this forum," that "no one state has a greater interest in the other in adjudicating this dispute" because the claim is a federal claim, and that Delaware or Texas are available alternative forums. (Doc. 23 at 7-8.) SafeRent does not address the third, fifth, and sixth factors.

The seven factors demonstrate that the exercise of jurisdiction here would be reasonable. First, there was purposeful interjection. The interjection into Arizona was particularly meaningful, as SafeRent invited Arizona property managers to rely on its services before renting out Arizona properties and allegedly created a false consumer report about an Arizona resident that resulted in his inability to secure Arizona housing. Both the subject of the false report and its audience were located in Arizona. Second, SafeRent has failed to articulate any specific burden in litigating in Arizona, whereas Plaintiff has provided evidence that SafeRent frequently litigates outside of Delaware and Texas. (Doc. 26 at 11; Doc. 26-2.) Third, SafeRent does not suggest there is any sovereignty conflict and appears to concede there is none. Fourth, Arizona "maintains a strong interest in providing an effective means of redress for its residents tortiously

injured." *Gordy v. Daily News, L.P.*, 95 F.3d 829, 836 (9th Cir. 1996).  Fifth, Plaintiff, his counsel, and his witnesses are located in Arizona.  Sixth, Plaintiff has asserted that his resources are limited and it "would be an incredible inconvenience for Plaintiff to be forced travel to another state to take part in a lawsuit related to his housing application in Arizona."  (Doc. 26 at 12.)  Seventh, although alternative forums exist in the states where SafeRent is at home, this does not, standing alone, amount to "a compelling case" that jurisdiction in Arizona is unreasonable.[9]

Accordingly, **IT IS ORDERED** that:

1.    SafeRent's motion to set aside default (Doc. 18) is **granted**.

2.    Plaintiff's motion for default judgment (Doc. 13) is **denied**.

3.    SafeRent's motion to dismiss for lack of jurisdiction (Doc. 23) is **denied**.

Dated this 4th day of October, 2022.

_____
Dominic W. Lanza
United States District Judge

---

[9]      Plaintiff's response to the motion to dismiss includes a request for sanctions for vexatiously multiplying the proceedings.  (Doc. 26 at 13-15.)  This request is denied because SafeRent's jurisdictional arguments were raised in good faith and are not vexatious.